**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| 1. NATIONAL ASSOCIATION OF FORENSIC COUNSELORS, INC., a Nevada Non-Profit Corporation, and<br>2. AMERICAN ACADEMY OF CERTIFIED FORENSIC COUNSELORS, INC., d/b/a AMERICAN COLLEGE OF CERTIFIED FORENSIC COUNSELORS, a Nevada For-Profit Corporation,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>1. NARCONON INTERNATIONAL, a California Non-Profit Corporation;<br>2. NARCONON OF GEORGIA, INC., a Georgia Non-Profit Corporation;<br>3. FRIENDS OF NARCONON INTL., a California Non-Profit Corporation;<br>4. PREMAZON, INC., a California Corporation;<br>5. NARCONON SPRING HILL, INC., d/b/a SUNCOAST REHABILITATION CENTER, a Florida Non-Profit Corporation;<br>6. BEST DRUG REHABILITATION, INC., a Nevada Non-Profit Corporation;<br>7. A LIFE WORTH LIVING, INC. d/b/a NARCONON COLORADO - A LIFE WORTH SAVING, a Colorado Non-Profit Corporation;<br>8. NARCONON FRESH START, INC., a California Non-Profit Corporation;<br>9. NARCONON SOUTH TEXAS, INC., a Texas Non-Profit Corporation;<br>10. NARCONON EASTERN UNITED STATES, INC., a Virginia Non-Profit Corporation;<br>11. ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL, a California Non-Profit Corporation;<br>12. RELIGIOUS TECHNOLOGY CENTER, a California Non-Profit Corporation;<br>13. NARCONON FREEDOM CENTER, INC., a Michigan Non-Profit Corporation;<br>14. GOLDEN MILLENNIUM PRODUCTIONS, | Case No. 1:16-cv-101<br><br><br><br><br><br><br><br><br><br><br><br><br><br>***Jury Trial Demanded***<br>***Attorney Lien Claimed*** |

1

INC., a California Corporation;                                  )
15. INTERNATIONAL ACADEMY OF                                     )
DETOXIFICATION SPECIALISTS, a California                         )
Non-Profit Corporation;                                         )
16. GREATCIRCLE STUDIOS, LLC, a Florida                          )
Limited Liability Company;                                       )
17. CHURCH OF SCIENTOLOGY                                        )
INTERNATIONAL, a California Corporation,                         )
18. ROYALMARK MANAGEMENT, INC., a                                )
California Corporation;                                          )
19. ROBERT J. HERNANDEZ, a citizen of                            )
California;                                                      )
20. ROBERT "BOBBY" WIGGINS, a citizen of                         )
California;                                                      )
21. JONATHAN BEAZLEY, a citizen of                               )
California;                                                      )
22. JOSEPH GUERNACCINI, a citizen of                             )
California;                                                      )
23. PHILIP R. KELLY, II, a citizen of                            )
Pennsylvania;                                                    )
24. THOMAS GARCIA, a citizen of Florida;                         )
25. CLARK CARR, a citizen of California;                         )
26. MICHAEL DIPALMA, a citizen of                                )
California;                                                      )
27. DAVID MISCAVIGE, a citizen of                                )
California;                                                      )
28. NICHOLAS THIEL, a citizen of Michigan;                       )
29. DAVID S. LEE, III, a citizen of Indiana;                     )
30. RICHARD "MATTHEW" HAWK, a citizen                            )
of Louisiana;                                                    )
31. MARY RIESER, a citizen of Georgia;                           )
32. ANTHONY BYLSMA, a citizen of                                 )
California;                                                      )
33. KENNETH H. POMERANCE, a citizen of                           )
Florida;                                                         )
34. JAMES "JIM" WOODWORTH, a citizen of                          )
Louisiana;                                                       )
35. CARL SMITH, a citizen of California;                         )
36. JONATHAN MORETTI, a citizen of                               )
California;                                                      )
37. GLEN PETCAVAGE, a citizen of Colorado;                       )
38. DAPHNA HERNANDEZ, a citizen of                               )
California;                                                      )
39. LURIA K. DION a.k.a. KATHY DION, a                           )
citizen of California; and                                       )
40. NARCONON OF NORTHERN                                         )

CALIFORNIA d/b/a NARCONON VISTA BAY      )
d/b/a NARCONON REDWOOD CLIFFS, a         )
California Non-Profit Corporation,        )
                                         )
     Defendants.

**COMPLAINT**

COME NOW, Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") and Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC") (collectively "Plaintiffs"), by and through their counsel of record Keesling Law Group PLLC, and hereby submit their claims and causes of action against Defendants.   In support thereof, Plaintiffs state as follows:

***PARTIES, JURISDICTION AND VENUE***

1.      Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") is a Non-Profit Corporation organized under the laws of the State of Nevada, with its principal place of business located in Fort Wayne, Indiana.

2.      Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC") is a For-Profit Corporation organized under the laws of the State of Nevada, with its principal place of business located in Fort Wayne, Indiana.

3.      Defendant Narconon International is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business located in Los Angeles, California.

4.      Defendant Narconon of Georgia, Inc. is a Non-Profit Corporation organized under the laws of the State of Georgia, with its principal place of business located in Carrollton, Georgia.

5.      Defendant Friends of Narconon International ("Friends of Narconon") is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business located in Pasadena, California.

6.      Defendant Narconon of Northern California d/b/a Narconon Vista Bay d/b/a Narconon Redwood Cliffs ("Narconon Vista Bay") is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business located in Watsonville, California.

7.      Defendant Premazon, Inc. is a For-Profit Corporation organized under the laws of the State of California, with its principal place of business located in Seal Beach, California.

8.      Defendant Narconon Spring Hill, Inc. d/b/a Suncoast Rehabilitation Center ("Narconon Spring Hill") is a Non-Profit Corporation organized under the laws of the State of Florida, with its principal place of business in Clearwater, Florida.

9.      Defendant Best Drug Rehabilitation, Inc. is a For-Profit Corporation organized under the laws of the State of Nevada, with its principal place of business in Manistee, Michigan.

10.     Defendant A Life Worth Living, Inc. d/b/a Narconon Colorado – A Life Worth Saving ("Narconon Colorado") is a Non-Profit Corporation organized under the laws of the State of Colorado, with its principal place of business in Fort Collins, Colorado.

11.     Defendant Narconon Fresh Start, Inc. ("Fresh Start") is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business in Glendale, California.

12.     Defendant Narconon South Texas, Inc. ("Narconon South Texas") is a Non-Profit Corporation organized under the laws of the State of Texas, with its principal place of business in Harlingen, Texas.

13.     Defendant Narconon Eastern United States, Inc. ("Narconon Eastern U.S.") is a Non-Profit Corporation organized under the laws of the State of Virginia, with its principal place of business in Clearwater, Florida.

14.     Defendant Association for Better Living and Education International ("ABLE") is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

15.     Defendant Religious Technology Center ("RTC") is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

16.     Defendant Narconon Freedom Center, Inc. ("Freedom Center") is a Non-Profit Corporation organized under the laws of the State of Michigan, with its principal place of business in Albion, Michigan.

17.     Defendant Golden Millennium Productions, Inc. ("Golden Millennium") is a corporation organized under the laws of the State of California, with its principal place of business in Pasadena, California.

18.     Defendant International Academy of Detoxification Specialists is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business in Pasadena, California.

19.     Defendant GreatCircle Studios, LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Clearwater, Florida.

20.     Defendant Church of Scientology International is a corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

21.     Defendant Royalmark Management, Inc. is a corporation organized under the laws of the State of California, with its principal place of business in Pasadena, California.

22.     Upon information and belief, Defendant Robert J. Hernandez currently is a resident and citizen of Pasadena, State of California.

23.     Upon information and belief, Defendant Robert "Bobby" Wiggins currently is a resident and citizen of Glendale, State of California.

24.     Upon information and belief, Defendant Jonathan Beazley currently is a resident and citizen of Capitola, State of California.

25.     Upon information and belief, Defendant Joseph Guernaccini currently is a resident and citizen of Watsonville, State of California.

26.     Upon information and belief, Defendant Philip R. Kelly, II currently is a resident and citizen of Abington, State of Pennsylvania.

27.     Upon information and belief, Defendant Thomas Garcia currently is a resident and citizen of the State of Florida.

28.     Upon information and belief, Defendant Clark Carr currently is a resident and citizen of Los Angeles, State of California.

29.     Upon information and belief, Defendant Michael DiPalma currently is a resident and citizen of Aptos, State of California.

30.     Upon information and belief, Defendant David Miscavige currently is a resident and citizen of Los Angeles, State of California.

31.     Upon information and belief, Defendant Nicholas Thiel currently is a resident and citizen of Battle Creek, State of Michigan.

32.     Upon information and belief, Defendant David S. Lee, III currently is a resident and citizen of Lowell, State of Indiana.

33.     Upon information and belief, Defendant Richard "Matthew" Hawk currently is a resident and citizen of Denham Springs, State of Louisiana.

34.     Upon information and belief, Defendant Mary Rieser currently is a resident and citizen of Duluth, State of Georgia.

35.     Upon information and belief, Defendant Anthony Bylsma currently is a resident and citizen of Sylmar, State of California.

36.     Upon information and belief, Defendant Kenneth Pomerance currently is a resident and citizen of Sunrise, State of Florida.

37.     Upon information and belief, Defendant James "Jim" Woodworth currently is a resident and citizen of Harahan, State of Louisiana.

38.     Upon information and belief, Defendant Carl Smith currently is a resident and citizen of Pasadena, State of California.

39.     Upon information and belief, Defendant Jonathan Moretti currently is a resident and citizen of Long Beach, State of California.

40.     Upon information and belief, Defendant Glen Petcavage currently is a resident and citizen of Fort Collins, State of Colorado.

41.     Upon information and belief, Defendant Daphna Hernandez currently is a resident and citizen of Pasadena, State of California.

42.     Upon information and belief, Defendant Luria K. Dion a.k.a Kathy Dion ("Kathy Dion") currently is a resident and citizen of Altadena, State of California.

43.     Defendants Narconon of Georgia, Inc., Narconon Vista Bay, Narconon Spring Hill, Best Drug Rehabilitation, Narconon Colorado, Narconon Fresh Start, Narconon South Texas, Narconon Eastern U.S., and Freedom Center will be collectively referred to as "Narconon Treatment Centers."

44.     Defendants Robert "Bobby" Wiggins and David S. Lee, III will be collectively referred to as "Narconon Referral Entities."

45.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1116 and 1121, 28 U.S.C. §§ 1331, 1338(a), and 1367(a).

46.     Personal jurisdiction exists over Defendants because Defendants have intentionally directed their activities toward residents of Indiana, Plaintiffs, and Plaintiffs' injuries arise out of the activities Defendants directed at Indiana. The exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice as Defendants knew that Plaintiffs reside in

Indiana, and thus that Plaintiffs would experience substantial injury in Indiana. Additionally, personal jurisdiction exists over all Defendants due to Defendants' participation in a civil conspiracy with their co-Defendant, David Lee, who is located in this forum.

47.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), (b), and (c), because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendants have sufficient connection with this District.

### *FACTUAL BACKGROUND AND ALLEGATIONS*

### NAFC Backgrounds and Trademarks

48.     NAFC is a Certification Board providing nationally accredited certifications for professionals working with criminal offenders in the fields of criminal justice, corrections, addictions and mental health.

49.     NAFC offers certifications, as developed by ACCFC, for the specialties of Forensic Counseling and Addictions.

50.     Relevant to the claims alleged herein, NAFC holds the Addiction Specialty Certifications, including:

a.   Master Addictions Counselor ("MAC")

b.   Certified Chemical Dependency Counselor ("C.C.D.C.")

c.   Certified Forensic Addictions Specialist ("CFAS"), formerly known as Certified Forensic Addictions Examiner ("CFAE").

d.   Certified Criminal Justice Addictions Specialist ("CCJAS")

e.   Certified Co-Occuring Disorder Specialist ("CCODS")

   f. Baccalaureate Addictions Counselor ("BAC")[1].

51. The Certifications of MAC, C.C.D.C. and CFAS have been nationally accredited through the National Commission for Certifying Agencies ("NCCA"), which increased the professional and marketable value of the Certifications.

52. NAFC is the parent corporation of Plaintiff ACCFC, such that ACCFC's existence is entirely dependent upon the existence and operation of NAFC.

53. Similarly, NAFC requires the ACCFC for the development of various certification activities and could not continue its existence if the ACCFC ceased to exist.

54. ACCFC is a for-profit corporation and the income producing/expense paying entity (i.e. holds all financial accounts) for NAFC, which produces zero income and pays no expenses.

55. ACCFC is the Certification Commission of NAFC, which develops the standards, requirements, various committees, certification development, periodic review of certification requirements, etc. for NAFC certifications.

56. In order to become certified through one of NAFC's certification programs, an *individual* must meet certain requirements depending on the type of certification.

57. For example, to receive a nationally accredited Addictions Specialty Certification, the applicant must have a Masters degree or higher from an accredited educational institution, an active state license in good standing (unless exempted

---

[1] NAFC no longer offers the BAC certification, but continues to honor previous certifications that are maintained as required.  NAFC reserves the right to reactivate and offer this certification in the future.

through legislation, or otherwise part of a field that has no professional licensure), one hundred eighty (180) hours of formal training in alcohol/drugs, i.e. treatment, prevention, education, etc., three years (or 6,000 hours) [or two years (4,000 hours) for non-clinical] of supervised full time professional experience in the profession, no misdemeanor or felony arrests for any sexual or violent offense, no reprimands or suspensions of the state license, no previously suspended or revoked NAFC certifications, and must successfully pass the NAFC certification examination.

58.     Non-nationally accredited certifications do not require a Masters degree, but instead have non-clinical and clinical requirements.

59.     The C.C.D.C. did not always require a Masters degree, but instead the requirements have evolved with the field, other boards, or as State regulations were revised.

60.     Individuals receiving the C.C.D.C. prior to the revisions with a Masters' requirement were "grandfathered" in, provided they maintained current, active and in good standing certifications.

61.     Additionally, the Applicant must complete an Affidavit attesting to the following relevant facts:

     a.   To read and stay apprised of the NAFC Ethical Standards and Code of Conduct, Policies and Procedures, Candidate Handbook, Use of the NAFC Logo Terms, Affidavit, and all other Terms and Conditions located on the NAFC website.

     b.   To report within thirty (30) days of notification and update monthly on any formal charge, complaint, investigation, arrest or conviction

related to a criminal act or ethical violation, or any professionally related civil action, civil litigation, or investigation.

62.     Under the terms of the Candidate Handbook Section 11.0, a member can only advertise or display NAFC certifications that are current.

63.     NAFC does not recognize, accredit, endorse, promote, or approve entire organizations and/or facilities and/or programs.

64.     Once an individual obtains a certification, he or she remains active for one (1) year barring any revocations or suspensions by NAFC.

65.     Thereafter, a member may renew the certification by paying the annual recertification fee, obtaining twenty (20) continuing education units annually, maintaining an active state license in good standing (unless exempt from licensure), and agreeing to abide by the NAFC Ethical Standards, Code of Conduct, Candidate Handbook, Policies and Procedures, use of the NAFC Logo Terms, Application Affidavit, and all other terms of membership.

66.     As part of its certification services, NAFC has designed a logo, which has been used to symbolize NAFC certifications.

67.     The Terms of Use of the NAFC Logo (the "Logo") include the following:

a.   To use the Logo, a "Use of the NAFC Logo Request Form" must be completed.

b.   The Logo may only be used by currently Certified professionals.

c.   The party must cease use and remove the Logo upon notification of NAFC and/or the expiration, suspension, revocation, or status other than active and in good standing of any certification.

d.   Upon approval of the Logo Request Form, the Logo will be emailed to the applicant, who can only display the Logo in the size provided or smaller.

e.   If the Logo is used on a website, it must be displayed smaller than the member's company logo, cannot be displayed as a dominant focal point, and must be embedded with the link to www.nationalafc.com.

f.   Restricted use of the NAFC logo is permitted on printed materials, business cards and websites only upon completion of the NAFC Logo Request form, must be displayed smaller than the user's logo, and cannot be displayed as a dominant focal point in either placement or size.

g.   Continued use of the logo is only permitted if the Logo Request Form is resubmitted each year with the individual's certification renewal.

h.   Use of the Logo represents an individuals certifications as well as a reflection to the public and other professionals of the caliber of professionals certified by the NAFC.

68.   This logo, depicted below, is recognized throughout the industry and is closely associated with NAFC and bears NAFC's trademarked name.

 

69.   NAFC is the owner of federal trademark <u>NATIONAL ASSOCIATION OF FORENSIC COUNSELORS</u>, Registration No. 3585933, filed May 14, 2008 (the "Mark").

### Defendants Misuse of NAFC Mark, Certifications and Logos

70.     Paragraphs 1 through 69 are hereby incorporated by reference in their entirety.

71.     For the purposes of this Complaint, the Narconon Network shall mean the drug rehabilitation facilities, treatment centers, referral and intervention entities and individuals who are under the control of Narconon International due to its active engagement, participation, approval, influence, and direction.

72.     Defendant Religious Technology Center ("RTC") is the entity holding the rights to use L. Ron Hubbard's name and writings as the self-proclaimed "Holder of the Dianetics & Scientology Trademarks".

73.     RTC licensed the L. Ron Hubbard trademarks to Defendant Church of Scientology International and has allowed the Church of Scientology International to license the drug rehabilitation facilities, treatment centers, and intervention entities within the Narconon Network to use L. Ron Hubbard trademarked property.

74.     Defendant David Miscavige ("Miscavige") is a Trustee and the Chairman of the Board of Defendant RTC.

75.     Defendants Narconon of Georgia, Inc., Narconon Vista Bay, Narconon Spring Hill, Best Drug Rehabilitation, Narconon Colorado, Narconon Fresh Start, Narconon South Texas, Narconon Eastern U.S., and Freedom Center (collectively "Narconon Treatment Centers") are all drug treatment and rehabilitation facilities operating as a part of the Narconon Network run by Narconon International, which controls the Narconon Treatment Centers by virtue of its active engagement,

participation, approval, influence, direction, and financial interest in and over the Narconon Treatment Centers.

76.     Defendant Narconon International is a subsidiary of Defendant ABLE.

77.     RTC, the Church of Scientology International, ABLE, Narconon International, and the Narconon Treatment Centers are wholly controlled by and operated for the benefit of Defendant Miscavige.

78.     Defendants Robert "Bobby" Wiggins and David S. Lee, III (collectively "Narconon Referral Entities") are individuals which operate websites for the purpose of referring business to Narconon Treatment Centers in exchange for a referral fee.

79.     RTC, the Church of Scientology, Narconon International, ABLE, Friends of Narconon, the Narconon Treatment Centers, the Narconon Referral Entities, and the individual Defendants entered into a common plan, at the direction and with the approval of Defendant Miscavige, to promote the Narconon Network, bolster Narconon counselors, draw additional customers, and increase profits through the unauthorized use of NAFC logos, trademarks and certifications.

80.     Narconon International controls every aspect of the management of Narconon Treatment Centers, including promulgation of the curriculum, training of staff, approval of website content, approval of promotional and advertising materials, and requiring the Narconon Treatment Centers to submit their participant statistics and financial numbers to Narconon International on a weekly basis.

81.     Narconon International receives ten percent (10%) of the gross proceeds from every Narconon Treatment Center.

82.     Narconon International requires each Narconon Treatment Facility to maintain a "Building Fund" that is controlled by Narconon International, which is supposed to represent money put aside for the construction of new facilities. However, Defendants ABLE and Narconon International have drained the "Building Funds" of the Narconon Treatment Facilities to fund a Church of Scientology book rather than to fund new construction.

83.     Defendant ABLE published numerous documents supporting the Narconon Treatment Centers and its counselors, falsely referencing the C.C.D.C. certifications of certain individuals, including Defendant Clark Carr.

84.     Additionally, ABLEcanada1@gmail.com is listed as the contact e-mail address for the following Narconon domains: www.narconon.ca, www.news.narconon.ca, www.narconon.bc.ca, and www.narconon.on.ca.

85.     One of the programs promulgated and mandated by Narconon International is the marketing program using NAFC credentials (regardless of veracity) to bolster Narconon Treatment Centers and counselors' credibility within the Narconon Network.

86.     At the direction of Narconon International and with the approval of ABLE, the individual Defendants have used the NAFC credentials by listing certifications after Defendants' names, despite the revocation, suspension, expiration or lack of certification.

87.     Additionally, the individual Defendants maintained websites that did not provide any names of certified individuals, but instead used the certifications and/or NBAE and NAFC names/logos to imply and mislead that they were unbiased, certified referral services that refered patients to Narconon Treatment Centers that are controlled by Narconon International.

88.     These misleading websites are registered either to employees of various Narconon Treatment Centers (at which the hiring decisions are controlled by Narconon International), the Narconon Treatment Centers themselves (which are controlled by Narconon International), the Narconon Referral Entities or otherwise claimed on Narconon International's IRS 990 Tax Forms.

89.     Narconon International, through its Narconon Treatment Centers, as well as Narconon Referral Entities and the individual Defendants operated over 400 websites containing purported certifications of staff members that, in reality, had been suspended, revoked, or never existed or otherwise have improperly used the NAFC credentials by referencing the facilities numerous (unnamed) C.C.D.C. certified counselors and promising "consultation by a Certified Chemical Dependency Counselor" to anyone calling an 800 number.

90.     Infringing websites, owned and/or operated by Narconon International, through its Narconon Treatment Centers, as well as Narconon Referral Entities and the individual Defendants, falsely claim to have a "full staff" of Certified Chemical Dependency Counselors.

91.    Additionally, Defendants' websites have posted the NAFC Logo without consent, an altered version of the logo, and an altered version of a defunct certificate.

92.    Defendants Narconon of Georgia and Narconon International-approved GreatCircle Studios advertise through multiple websites (of which Narconon of Georgia was approved by Narconon International) that "[t]he primary counselors are accredited by the National Board of Addiction Examiners as Certified Chemical Dependency Counselors."

93.    Additionally, Narconon International-controlled Narconon of Georgia falsely used the NAFC logo on 122 web pages under Narconon of Georgia's URL drugrehabhelp.net.

94.    Defendant Narconon International-controlled Narconon Vista Bay advertised itself as "belonging to the National Association of Forensic Counselors," as "Accredited" and used an altered version of the NAFC logo.

95.    Additionally, Narconon International-controlled Defendant Narconon Vista Bay used the altered NAFC logo as recently as February, 2013, and claims of C.C.D.C. certification as recently as April 2013, despite the counselors' expirations dating back to 2008.

96.    The Logo had been attached without completion of the necessary forms and without consent of NAFC.

97.    Narconon International-controlled Defendant Narconon Vista Bay falsely advertised that over 35% of the staff are C.C.D.C.s or RASs on its websites

www.redwoodcliffsrehab.com and www.narcononvistabay.com, while also claiming to have 9 C.C.D.C.s, 2 BACs, 1 DAC and 1 MAC on its company page on LinkedIn.

98.     The Logo had been attached without the correct link or with a link to www.nafc.org, which is a website for incontinence.

99.     Defendants have advertised that NAFC has accredited the Narconon International-controlled Narconon Treatment Centers, which NAFC does not do.

100.    Defendant Glen Petcavage owns and operates the website of Narconon International-controlled Narconon Colorado at narcononcolorado.org, which promised a call back from a Certified Chemical Dependency Counselor and continued to post the false credentials of Narconon International-approved Gary Smith as C.C.D.C. despite their revocation in March 2013.

101.    Narconon International-approved Defendant Joseph Sauceda, through Narconon International-controlled Defendant Narconon Fresh Start, advertised himself as C.C.D.C., when in reality NAFC has no record of his certification.

102.    Additionally, Narconon International-approved Defendant Joseph Sauceda posted a Border Patrol Appreciation Certificate, which was issued to "Joseph Sauceda C.C.D.C." on October 11, 2011, which shows that he falsely represented himself to the Border Patrol as C.C.D.C. despite his lack of certification.

103.    Narconon International-approved Defendant Anthony Bylsma, through Narconon International-controlled Defendant Narconon Fresh Start, advertised himself as C.C.D.C., when in reality NAFC has no record of his certification.

104.    Narconon International-approved Defendant Michael DiPalma advertised himself as C.C.D.C. on LinkedIn and as a "Certified Chemical Dependency Counselor" on Defendant Narconon International's website, when in reality his certification was revoked on May 23, 2013.

105.    Defendant David Lee owns and operates the website

http://www.interventionservicesinc.com/intervention-101/what-is-an-interventionist/,  which falsely states, "each of our intervention specialists have, at a minimum, certifications as Chemical Dependency Counselor."

106.    Defendant Robert J. Hernandez advertised himself as C.C.D.C., when in reality his certification expired on August 30, 2013.

107.    Defendant Robert J. Hernandez, as President of Defendant Golden Millennium, also advertised Narconon International-approved Narconon employee Gary W. Smith's as C.C.D.C. on Golden Millennium's website www.getcured.org.

108.    Defendant Golden Millennium's website www.getcured.org sits on the same servers (NS1.ROYALSTARHOSTING.COM and NS2.ROYALSTARHOSTING.COM) as the website www.friendsofnarconon.org.

109.    Defendant Friends of Narconon International owns and operates the website www.friendsofnarconon.org, which falsely advertised Narconon employee Bobby Wiggins as C.C.D.C., despite its expiration in December 2012.

110.    Defendant Daphna Hernandez is a co-founder and board member of Defendant Friends of Narconon International.

111.    Defendant Daphna Hernandez operated an unregistered organization in the State of California entitled Life Coaching Masters, wherein she advertised

herself on its website www.lifecoachingmasters.com as C.C.D.C., despite the expiration of her certification on August 30, 2013.

112.    In her application to NAFC for certification, Defendant Daphna Hernandez never disclosed her employment or job title with Life Coaching Masters.

113.    The website www.lifecoachingmasters.com, which falsely posted Defendant Daphna Hernandez's certification information despite its expiration in August 2013, is owned and operated by Defendant Robert J. Hernandez and Defendant Royalmark Management, Inc.

114.    Additionally, Defendant Daphna Hernandez falsely advertised herself as C.C.D.C., despite its expiration in August 2013, on the following additional websites:         www.youtube.com,         www.friendsofnarconon.com, www.methadonedetoxforum.com, www.drugtreatmentcentersmilwaukee.com, and www.drugtreatmentcenterswashingtondc.com.

115.    Defendant GreatCircle Studios, LLC owns and operates the website www.drugrehabthatworks.com, which falsely advertised, "The primary counselors are accredited by the National Board of Addiction Examiners as Certified Chemical Dependency Counselors."

116.    The website www.drugrehabthatworks.com is on the servers NS1.GREATCIRCLESTUDIOS.NET and NS2.GREATCIRCLESTUDIOS.NET.

117.    Also on the same servers NS1.GREATCIRCLESTUDIOS.NET and NS2.GREATCIRCLESTUDIOS.NET is the Narconon International-controlled Narconon Eastern U.S.'s website www.narcononeastus.org, which falsely advertised

Narconon International-approved Narconon employee Gary Smith as C.C.D.C. despite his revocation in March 2013.

118.   Narconon International-approved Defendant Jonathan Beazley, through Narconon International-controlled Defendant Narconon Vista Bay as well as professionally on LinkedIn, previously, falsely advertised himself as C.C.D.C., when in reality his certification expired on December 30, 2012.

119.   Additionally, Narconon International-approved Defendant Jonathan Beazley falsely advertised himself on Narconon International's website as a "Certified Chemical Dependency Counselor", despite his certification's expiration in December 2012.

120.   Narconon International-approved Narconon employee Nick Bailey, through Narconon International-controlled Defendant Narconon Vista Bay as well as professionally on LinkedIn, falsely advertised himself as C.C.D.C., when in reality his certification expired on December 30, 2008.

121.   Narconon International-approved Defendant Joseph Guernaccini, through Narconon International-controlled Defendant Narconon Vista Bay, falsely advertised himself as C.C.D.C., when in reality his certification expired on December 30, 2008.

122.   Defendant Kevin Lee, through Defendant Intervention Services, falsely advertised himself as C.C.D.C., when in reality his certification expired on August 30, 2011.

123.    Narconon employee Sharon Kubacki, through Defendant Intervention Services, falsely advertised herself as C.C.D.C., when in reality NAFC has no record of her certification.

124.    Defendant Intervention Services falsely advertised an individual by the name of Benjamin Whitaker as C.C.D.C., when in reality NAFC has no record of this individual or his certification.

125.    Defendant Philip R. Kelly, II, through Defendant Intervention Services, falsely advertised himself as C.C.D.C., when in reality NAFC has no record of his certification.

126.    Narconon International-approved Defendant Thomas Garcia, through Narconon International-controlled Defendant Narconon Spring Hill, falsely advertised himself as CFAE, when in reality his certification expired on May 30, 2009 and the CFAE certification ceased to exist after it was changed to CFAS in March of 2012.

127.    Defendant Nicholas Thiel owns and operates the website www.freedomtreatmentcenter.wordpress.com, which falsely advertises the Freedom Treatment Center's "NBAE Certified Chemical Dependency Counselors".

128.    Narconon International-approved Defendant Richard Matthew Hawk in conjunction with Narconon International-controlled Narconon Georgia, owns and operates the websites www.drugrehabhelp.net, www.drugsno.com, www.atlantarecoverycenter.com, www.narcononworks.com, which falsely advertised "[t]he primary counselors are accredited by the National Board of Addiction Examiners as Certified Chemical Dependency Counselors", posted the

unauthorized NAFC logo and name, falsely listed Narconon International-approved Defendant Mary Rieser as C.C.D.C. despite her revocation in February 2013, and falsely offers the ability to speak to a certified chemical dependency counselor.

129.   Narconon International-approved Defendant Mary Rieser falsely advertised herself as C.C.D.C. on several websites, despite the fact that her certification was revoked on February 26, 2013.

130.   Defendant Anthony Bylsma owns and operates the website www.drug-prevention.org, which posted the false credentials of Narconon International-approved Narconon employee Gary W. Smith as C.C.D.C., despite his revocation in May 2013.

131.   Defendant Kenneth Pomerance owns and operates the website www.addictionrehabfinder.com, which posted the false credentials of Narconon International-approved Derry Hallmark as C.C.D.C. despite his certification's expiration in 2010.

132.   Defendant Jonathan Moretti and Defendant Premazon, Inc. own and operate the website www.drug-rehabprogram.com, which posted the false credentials of Narconon International-approved Marcel Gemme, despite its expiration in 2009.

133.   Defendant James "Jim" Woodworth advertises himself as C.C.D.C. on several websites, despite the fact that his certification expired on March 30, 2013.

134.   Defendant Carl Smith, through the apparently unregistered and unincorporated entity Defendant International Academy of Detoxification Specialists, owns and operates the website www.nydetox.org, which posted the false

credentials of Defendant Jim Woodworth as C.C.D.C., despite its expiration in early 2013.

135.    Former Narconon International President and CEO Defendant Clark Carr ("Carr"), through Defendant Narconon International, advertised himself as C.C.D.C., when in reality his certification expired on November 30, 2012.

136.    Additionally, Carr began advertising himself as a C.C.D.C. at least four (4) months prior to his initial NAFC certification.

137.    Carr falsely advertised himself as a C.C.D.C. in an article published in the San Francisco Editorial prior to even applying for his C.C.D.C.

138.    Narconon International-approved Defendant Kathy Dion falsely advertised herself as C.C.D.C., despite her expiration on February 28, 2009.

139.    In 2014, Defendant ABLE, which is the parent entity of Narconon International, published an issue of "Solutions" magazine, which included an interview with Defendant Dion and falsely credits Defendant Dion as being a Certified Chemical Dependency Counselor, despite her expiration in February 2009.

140.    The National Board of Addiction Examiners ("NBAE") has not functioned since 2006 and which never accredited facilities or programs as a whole.

141.    NBAE was a short-lived sub-board under NAFC, which was developed to assist in the management of addiction certifications.

142.    NBAE was created on March 25, 1996 and dissolved on October 18, 1999.

143.    NBAE continued as a specialty subdivision under NAFC until 2006 when it was completely eliminated.

144. For one year NAFC honored the NBAE certificates until 2007 when new certificates were issued upon a member's renewal and the NBAE certificates were phased out.

145. Defendant ABLE is a Scientology organization formed to expand all Scientology activities and organizations within a particular continental area, which, relevant hereto, involves promotion of the drug rehabilitation fields, such as the Narconon Network.

146. Upon information and belief, RTC and ABLE strictly control Narconon International as an arm of the Defendant Church of Scientology International.

147. In order to promote Defendants Church of Scientology, RTC and the Narconon International-controlled Narconon Treatment Centers, Miscavige spoke during an event transmitted via satellite from a packed Ruth Eckerd Hall in Clearwater, Florida concerning the NBAE certifications, falsely claiming:

    a. That the NBAE certifications are a necessary prerequisite for counselors to obtain insurance and state or federal funding;

    b. That NBAE was influenced by the L. Ron Hubbard drug rehab technology;

    c. That Narconon International executives have been accepted to the NBAE;

    d. That Narconon International executives have the authority to provide drug certifications;

    e. That Narconon International staff briefed the NBAE on L. Ron Hubbard's drug rehab technology and how their staff are trained - it changed NBAE's whole "think"; and

    f.   That the training in L. Ron Hubbard's technology at Narconon International now officially replaced all college training requirements.

148.   In 2012 and 2013, Defendants were the subjects of negative media attention as a consequence of lawsuits that have been filed against Defendants' Narconon International-controlled Treatment Centers due to deaths of residents/patients and raids by the government.

149.   Narconon International-controlled Defendant Narconon Georgia was raided and shut down by the local authorities, yet improperly used the NAFC logo on its website without consent as recently as September 3, 2013, long after the raid, revocation and NAFC's cease and desist letter.

150.   Defendants Narconon International, ABLE, Friends of Narconon, RTC, and Church of Scientology International exert control over and are actively engaged in the Narconon Treatment Centers, the Narconon Referral Entities and the other individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks, and certifications.

151.   The NAFC logos and designations are willfully used by individual Defendants and Narconon Treatment Centers to bolster the credibility of Narconon International via the Narconon Treatment Centers and counselors in order to draw in more patients and increase profits at the expense of Plaintiffs.

152.   Plaintiffs learned about Defendants' common plan and unauthorized use of the certifications, logos, Mark, and links in 2013.

153.   As a consequence of Defendants' actions, the NAFC certifications have been devalued to the public, the State registration boards, the national boards and

the national authorities, including causing serious questions concerning the independence of NAFC.

154.    As a consequence of Defendants' actions, Plaintiffs have suffered significant financial and reputational damages while Defendants have obtained significant financial and reputational benefit.

### CAUSES OF ACTION

### I.    FEDERAL TRADEMARK INFRINGEMENT

155.    Paragraphs 1 through 154 are hereby incorporated by reference in their entirety.

156.    Defendants' uses of NAFC's Mark, Logo and Certifications on Defendants' websites and in Defendants' publications are unauthorized.

157.    Defendants' unauthorized uses of NAFC's Mark, Logo and Certifications are likely to cause confusion, mistake and/or deception as to the source, affiliation, sponsorship and/or authenticity of Defendants' qualifications.

158.    As a result of Defendants' unauthorized uses, the public is likely to believe Defendants are approved by or affiliated with NAFC.

159.    As a result of Defendants' unauthorized uses and Defendants negative media attention, NAFC's Certification and status in the industry have been damaged.

160.    Defendants' infringement on NAFC's trademark is willful, intended to reap the benefit of the goodwill and reputation of NAFC to serve Defendants' ultimate purposes, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

161.    As a consequence of Defendants' willful and wrongful conduct, Plaintiffs have suffered, and will continue to suffer, substantial damages.

162.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover damages, which include any and all profits Defendants have made as a result of their wrongful conduct.

163.    Defendants' wrongful conduct was willful under the Lanham Act, therefore Plaintiffs are entitled to treble damages pursuant to 15 U.S.C. § 1117(b).

164.    Alternatively, Plaintiffs are entitled to statutory damages for each misused Mark pursuant to 15 U.S.C. § 1117(c).

165.    Because this is an exceptional case of Defendants' wrongful conduct, Plaintiffs are entitled to attorney's fees pursuant to 15 U.S.C. § 1117(a).

## II.    COMMON LAW TRADEMARK INFRINGEMENT

166.    Paragraphs 1 through 165 are hereby incorporated by reference in their entirety.

167.    Plaintiffs have common law rights in the NAFC Certifications and Logo based on their continuous use of the same throughout the United States in connection with the certification of individual counselors.

168.    Defendants' unauthorized uses of NAFC's Certifications and Logo to promote their facilities and staff are likely to cause confusion, mistake and deception to the public as to the qualifications of Defendants.

169.    Defendants' unauthorized uses of NAFC's Certifications and Logo with no connection or affiliation with NAFC and/or ACCFC and without NAFC's and/or ACCFC's consent causes irreparable harm to Plaintiffs.

170.    Despite Defendants' actual and constructive knowledge of Plaintiffs' ownership and prior use of the NAFC Certifications and Logo, Defendants have continued using them without consent.

171.    Defendants' actions are deliberate, willful and have been done with the intention of trading upon the valuable goodwill and reputation of Plaintiffs in order to gain profit.

172.    As a consequence of Defendants' actions, Plaintiffs have suffered injury and loss.

### III.    FEDERAL INFRINGEMENT PURSUANT TO 15 U.S.C. § 1125

173.    Paragraphs 1 through 172 are hereby incorporated by reference in their entirety.

174.    Defendants' marketing, promotion, and offering of services while using the NAFC Certifications, Marks and Logo constitute false designations of origin and false descriptions or representations that Defendants services are certified by NAFC and/or ACCFC, when in fact they are not.

175.    Such conduct causes confusion, mistake and deceives the public concerning the existence of an affiliation, connection or association between Defendants and Plaintiffs, when in fact there is none.

176.    Defendants misused NAFC's Certifications, Marks and Logos in commercial advertising and promotion concerning Defendants' services.

177.    As a result of Defendants' unauthorized uses of NAFC's Certifications, Marks and Logos, Plaintiffs have suffered and will continue to suffer damages.

178.    Defendants' conduct is willful, intended to reap the benefit of Plaintiffs' goodwill and reputation, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

## IV.    CIVIL CONSPIRACY

179.    Paragraphs 1 through 178 are hereby incorporated by reference in their entirety.

180.    Defendants intentionally engaged in a common plan to utilize NAFC's Certification, Mark and Logo to attract customers to Defendants' drug treatment facilities, thereby increasing profits for the Narconon Network.

181.    Defendants were aware of the common plan and the common purpose: to receive acclaim in the industry, attract additional customers, and consequently profit based on the use of the NAFC Certifications, Mark and Logo.

182.    Defendants acted in concert, agreed and cooperated to achieve such misuse and each took affirmative steps to encourage the achievement of their plan.

183.    As a direct and proximate result of Defendants' conspiratorial conduct, Plaintiffs have suffered irreparable harm and loss.

## V.    REQUEST FOR INJUNCTION

184.    Paragraphs 1 through 183 are hereby incorporated by reference in their entirety.

185.    Based on Defendants' actions as stated herein and Defendants' continued misuse of the NAFC Certifications and Logo, Plaintiffs are at risk for further damages.

186.    Plaintiffs request a preliminary injunction to command Defendants to refrain from using NAFC Certifications and/or Logo that are the subject of this litigation.

187.    If Defendants continue their actions, Plaintiffs will suffer irreparable harm.

188.    Plaintiffs request a preliminary injunction stay in place during the pendency of this litigation.

189.    Plaintiffs additionally request a permanent injunction preventing Defendants' use of the NAFC Certifications and Logos.

190.    Plaintiffs have no adequate remedy at law for Defendants' continued wrongful conduct because, among other things:

    a. NAFC's Mark, Certifications and Logo are unique and valuable property which has no readily determinable market value;

    b. Defendants' infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by any monetary award;

    c. If Defendants are allowed to continue such misuse, the public will likely continue to become further confused, mistaken and deceived as to the qualifications of Defendants; and

    d. Defendants' wrongful conduct and resulting damage to Plaintiffs is continuing.

    e. Pursuant to 15 U.S.C. §§ 1116(a), Plaintiffs are entitled to injunctive relief.

### *CONCLUSION*

WHEREFORE, Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors, Inc. respectfully pray the Court for judgment on

Plaintiffs' claims, compensatory, statutory, and punitive damages in excess of $75,000.00 and to the full extent of a law, an injunction preventing the unauthorized use of NAFC certifications, designations, and logos, attorney's fees, costs, pre- and post-judgment interest and such further relief as the Court deems just and proper.

Respectfully submitted,

Saeed & Little, LLP

 s/ Jessica Wegg
Jessica Wegg, No. 28693-49
Saeed & Little, LLP
1433 N. Meridian St., Suite 202
Indianapolis, IN 46202
(317) 721-9214 Phone
(888) 422-3151 Fax
Jessica@sllawfirm.com
*Attorneys for Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a ACCFC of Certified Forensic Counselors*

**Jury Trial Demanded**
**Attorney Lien Claimed**